Van Brunt, P. J.
The facts found by the referee, and which were justified by the evidence, are about as follows:
In October, 1884, the defendant William S. Maher purchased from the defendant Harry St. Ormond certain printing appliances for the sum of $16,500, to be paid $4,000 in cash, $1,000 in a note payable in six months and the balance, $11,500, in thirty-three notes, bearing date October 16,1884, thirteen notes being for $500, and payable to the order of St. Ormond and at intervals of two months. The first being payable two months from date and the last twenty-six months from date, and twenty notes for $250 each, also payable at intervals of two months, the first being payable twenty-eight months and the last fifty-eight months from date.
It was the understanding and agreement between the; parties that these thirty-three notes were not to be paid in cash, but were to be paid in printing to be done for St. Ormond at trade rates, but through the mistake and oversight upon the part of the attorney for St. Ormond & Maher, such portion of the agreement as related to the payment of these notes in printing was not written upon the property purchased, to secure their payment.
Subsequently a few days after the making of the notes and before the negotiation of any of them, St. Ormond & Maher signed a paper by which it was declared that it was mutually understood and agreed that these notes should be paid in printing.
In January, 1885, Maher sold the property bought from St. Ormond to the plaintiff who bought the same subject to such hens and incumbrances as were upon it at the time of sale.
The defendant Grein was interested in the printing business conducted by St. Ormond and was familiar with the financial condition and the conduct of the business, and was aware of the terms on which said purchase was made, but had no notice of the separate paper executed as aforesaid.
The defendant Helen Potter was interested in said busi *423 ness, which together with St. Osmond, was indebted to her in the sum of $8,500.
St. Ormond had become insolvent and unable to pay the claims against him.
St. Ormond indorsed to the defendant Gein $3,500 worth of the said notes which were to be paid in printing in payment of a precedent debt, no new or valuable consideration being paid therefor.
The balance of said notes together with the $1,000 note were indorsed by St. Ormond to the defendant Helen Potter who at the time of such transfer paid in cash $1,550 and received the balance of the notes in payment of a precedent debt.
The plaintiff has at all times been ready and willing to pay the notes according to the terms of the agreement between the parties.
This action was brought to reform the mortgage and notes by inserting in each of them “payable as per contract for printing.”
The learned justice before whom the case was tried granted the relief demanded, except as to the $1,000 held by defendant Potter, and as to the $1,550 additional on the other notes held by her, and from this judgment both parties appeal.
The learned justice, from the evidence taken before, him, was justified in finding that the defendant Potter had paid $1,550 in cash at the time of the transfer of the notes to her and was a bona fide holder of printing notes to that extent.
It is true that from one portion "of her testimony the inference to be drawn is that only $250 was advanced in cash at the time of the transfer of the notes, yet in another part she testifies to the fact that notes were transferred at the time the advances testified by her were made.
As to the defendant Gein, he knew of the orjgin of the notes and could not therefore claim as a bona fide holder.
The only other question raised upon this appeal is as to the right of the plaintiff to any relief because of the foregoing facts.
It is claimed by the defendants that the plaintiff was not entitled to reformation because there was no mistake in leaving out the clause as to printing from the notes and the mortgage.
That if there was any mistake it was one of law in the supposition that the subsequent agreement would answer all purposes.'
It does not seem to be at all material whether the plaintiff was entitled to a reformation of the mortgage or notes or not. He was entitled as a matter of equitable relief to have the agreement as to the method in which the *424 notes were to be paid attached to the notes so that it would follow the notes into whosesoever hands they should go.
The notes were liable to pass into the hands of bona fide purchasers before maturity, in which case the plaintiff would be liable for their payment, and because of these peculiar circumstances he was entitled to equitable relief from the court. Metropolitan Elevated Railway Co. v. Manhattan Railway Co., 11 Daly, 373; S. C., 14 Abb. N. C., 103, and cases there cited.
This was all that he obtained, and it is quite immaterial as to what the process was called in giving the relief, even if erroneous names were used, if the plaintiff was entitled to the result in the form of relief and such result naturally flowed from the facts proved.
It is clear that the fact that the notes should be paid in printing was a defense to them as long as they remained in St. Ormond’s hands, and equity required that by a transfer of these notes the plaintiff should not be deprived without any fault of his of this defense.
This was all the relief which the plaintiff got. The agreement as to method of payment was ordered to be placed upon the face of the notes so as to effectually bar their being transferred to bona fide holders. Such relief may be called reforming the notes and mortgage or attaching to them the agreement as to their payment.
Whichever it was, the effect was the same and to that relief the plaintiff was entitled.
Judgment affirmed, without costs.
Brady and Daniels, JJ., concur.